IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EMPLOYERS RESOURCE § | | |
| MANAGEMENT COMPANY § | | |
| § | | |
| v. § | A-06-CA-181 LY | |
| § | | |
| TEXAS DEPARTMENT OF INSURANCE § | | |
| & MIKE GEESLIN, IN HIS CAPACITY § | | |
| AS COMMISSIONER OF THE TEXAS § | | |
| DEPARTMENT OF INSURANCE § | | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion to Dismiss filed on April 5, 2006 (Clerk's Doc. No. 6), Plaintiff's Response filed on April 17, 2006 (Clerk's Docket No. 7), Defendants' Reply filed on May 1, 2006. (Clerk's Docket No. 8), and Plaintiff's Letter Brief filed on August 15, 2006 (Clerk's Docket No. 19). The District Court referred the instant case to the Magistrate Court on June 1, 2006, for Report and Recommendation pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. The Magistrate Court conducted a hearing on the Motion to Dismiss on July 17, 2006.

### I. GENERAL BACKGROUND

Plaintiff Employers Resource Management Company ("ERMC"), a Virginia corporation, began operating as a staff leasing company in the State of Texas in 1989. In 1993, the Texas Legislature passed the Staff Leasing Services Act ("SLSA") which requires the licensing and regulation of staff leasing services companies in Texas. See TEX. LAB. CODE ANN. Ch. 91 (Vernon

2006). Pursuant to the requirements of the Act, ERMC applied for a staff leasing services license with the Texas Department of Licensing and Regulation ("TDLR") for its staff leasing services license, which it received in January of 1995.

In the process of applying for its staff leasing services license, ERMC disclosed to the TDLR that it was sponsoring a self-funded employee welfare benefit plan ("Plan") for its assigned employees. As part of the process of reviewing ERMC's application for a staff leasing services license, the TDLR requested information from the Texas Department of Insurance ("TDI") regarding whether the license should be issued to ERMC. Although TDI now contends that it expressed concern about whether ERMC's self-funded health plan was actually a Multiple Employer Welfare Arrangement ("MEWA") – for which a certificate of authority from TDI is required to operate in Texas – TDLR nevertheless renewed ERMC's staff leasing services license upon each application between 1995 and 2000. ERMC emphasizes that with each application, it disclosed to the TDLR the details of its self-funded employee welfare benefit plan and insists that the plan was not a MEWA, but rather a single employer plan under ERISA.

In January 2000, TDLR for the first time refused to approve ERMC's staff leasing services license. TDLR informed ERMC that it would not renew the license until it received an advisory opinion from the United States Department of Labor (which regulates employee welfare benefit plans pursuant to the provisions of ERISA) regarding whether ERMC's Plan was actually a MEWA or a single employer plan. ERMC contends that it requested a hearing regarding the renewal of its staff leasing services license, but that TDLR never held such a hearing. In an effort to have its staff leasing services license reinstated, ERMC voluntarily went to the TDI to apply for a certificate of authority as a MEWA for its self-funded employee welfare benefit plan pursuant to Chapter 846 of

the Texas Insurance Code. The TDI, however, informed ERMC that it would not issue it a certificate of authority because the Plan served EMRC clients in more than one industry, and the provisions of Chapter 846 require that the participating employers be in the same trade or industry. Accordingly, in 2004 ERMC voluntarily stopped offering its self-funded employee welfare benefit plan in order to receive a new staff leasing services license from TDLR.

Thereafter, the TDI began an enforcement action (filed with the State Office of Administrative Appeals) against ERMC alleging that ERMC had engaged in the unauthorized business of insurance by operating a MEWA without obtaining a certificate of authority from the TDI. In April 2004, the TDI agreed to an informal resolution and recommended a consent order with a $5,000 administrative penalty. ERMC, however, disagreed with the wording of the proposed order and the TDI therefore pursued its enforcement action. The TDI then proposed entry of a consent order with an $80,000 penalty, which again ERMC refused. Prior to the scheduled administrative hearing on the matter, both the TDI and ERMC filed motions for summary disposition pursuant to the Texas Administrative Code. Upon considering the motions, the Administrative Law Judge ("ALJ") issued an order denying ERMC's Motion and granting the TDI's Motion in part. In his Order, the ALJ determined that ERMC had engaged in the unauthorized business of insurance in offering its self-funded employee welfare benefit plan without obtaining a certificate of authority from the TDI. The ALJ further scheduled a hearing to determine the amount of the administrative penalty, if any, that should be assessed against ERMC.

After the administrative hearing before the ALJ, the ALJ issued a proposal for decision, adopting the TDI's finding that ERMC had engaged in the unauthorized business of insurance and recommended that a $1 million administrative penalty be assessed against ERMC. Based upon the

ALJ's proposal, the Commissioner of Insurance, Mike Geeslin, issued Order No. 05-0981 on November 10, 2005, concluding that ERMC had engaged in the unauthorized business of insurance by operating a MEWA without prior authorization from the TDI and assessed a $1 million administrative penalty against ERMC. Thereafter, ERMC filed a motion for rehearing arguing that its health plan is not a MEWA but a single employer health plan under ERISA. Commissioner Geeslin failed to act on the motion for rehearing, thereby making Order No. 05-0981 the final decision of the agency.

On March 15, 2006, ERMC filed two separate lawsuits against the TDI and Commissioner Mike Geeslin, one in state court and one in federal court, challenging the Commissioner's Order. ERMC's federal Complaint alleges a claim for damages under 42 U.S.C. § 1983 on the basis that TDI's $1 million penalty constitutes a "grossly excessive" penalty in violation of the Fourteenth Amendment to the Constitution. ERMC also seeks a declaratory judgment declaring that: (1) ERISA preempts state laws attempting to regulate employee welfare benefit plans such as ERMC's Plan; (2) Defendants do not have jurisdiction over this matter under Texas insurance law; (3) ERMC's health plan was not a MEWA since the Plan covered employees of only one employer; (4) the Defendants are estopped from asserting penalties against ERMC in light of their prior knowledge of ERMC's Plan and its failure to act; (5) the Defendants' actions in raising the administrative penalty from $5,000 to $80,000 to $1 million constitutes an irrational and unfair penalty in violation of the Federal and State due process and equal protections clauses; (6) the Defendants' actions violate Article I, Section 19 of the Texas Constitution; (7) the SLSA permits the offering of a self-funded employee welfare benefit plan; (8) the Defendants' action to impose an administrative penalty is barred by limitations; and (9) the Texas Insurance Code does not permit the Defendants

to cumulate multiple violations for the purpose of assessing a higher administrative penalty than the statute permits. Finally, ERMC seeks an injunction enjoining the Defendants from proceeding with any enforcement action against ERMC and/or attempting to assess or collect any penalty from ERMC.

Like ERMC's federal lawsuit, ERMC's state lawsuit seeks a declaratory judgment declaring that: (1) its self-funded employee welfare benefit plan is single-employer sponsored and thus was not a MEWA requiring a certificate of authority from the TDI; (2) that it did not engage in the unauthorized practice of insurance; (3) that the action to impose an administrative penalty is barred by limitations; and (4) ERISA preempts Texas laws attempting to regulate ERMC's plan.

## II.  THE MOTION TO DISMISS

On April 5, 2006, Defendants filed the instant Motion to Dismiss arguing that the Court should apply the *Younger* abstention doctrine in this case and abstain from exercising jurisdiction in this case and dismiss the lawsuit. Defendants argue that the application of the *Younger* abstention doctrine is proper in this case because there are ongoing proceedings at the state level which are judicial in nature, the important state interest of regulating the business of insurance is implicated, and the state proceedings provide an adequate opportunity to raise constitutional issues.

In response, ERMC argues that abstention is not appropriate in this case. ERMC argues that it is not attempting to enjoin a pending state proceeding but is merely attempting to proceed with a federal lawsuit based on constitutional and federal statutory grounds and thus *Younger* is inapplicable. ERMC also argues that the proper abstention doctrine if any that should be applied in this case is the *Colorado River* standard, not the *Younger* doctrine, and that abstention is not warranted in this case under either doctrine.

## III.  ANALYSIS

**A.**     ***Younger* Abstention**

As noted, Defendant argues that the Court should apply the *Younger* abstention doctrine in this case and abstain from exercising jurisdiction in this case. In *Younger v. Harris*, 401 U.S. 37 (1971), which involved a facial First Amendment-based challenge to the California Criminal Syndicalism Act, the Supreme Court held that absent extraordinary circumstances federal courts should not enjoin pending state criminal prosecutions. The holding in *Younger* was based "partly on traditional principals of equity, but rested primarily on the 'even more vital consideration' of comity." *NOPSI v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989) (quoting *Younger*, 401 U.S. at 43-44). As the Supreme Court explained, comity includes "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Ibid.*

Since *Younger*, the Supreme Court has recognized that the concern for comity and federalism is equally applicable to certain other pending state proceedings. Thus, the Court has applied the *Younger* principle to civil proceedings in which important state interests are involved. *See Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (applying *Younger* to state nuisance civil enforcement proceeding); *Juidice v. Vail*, 430 U.S. 327 (1977); *Trainor v. Hernandez*, 431 U.S. 434 (1977) (*Younger* applied to civil enforcement action seeking return of welfare payments allegedly wrongfully received); *Moore v. Sims*, 442 U.S. 415, 423 (1979) (*Younger* abstention appropriate in context of state child removal proceedings due to allegations of child abuse). The Court has also applied the *Younger* doctrine to state administrative proceedings which are judicial in nature and

in which important state interests are vindicated, so long as in the course of those proceedings the federal plaintiff would have a full and fair opportunity to litigate his constitutional claim. *See Gibson v. Berryhill*, 411 U.S. 564, 576-577 (1973) ("administrative proceedings looking toward the revocation of a license to practice medicine may in proper circumstances command the respect due court proceedings."); *Middlesex County Ethics Committee v. Garden State Bar Assn.*, 457 U.S. 423 (1982) (holding that federal courts should refrain from enjoining lawyer disciplinary proceedings initiated by state ethics committees if the proceedings are within the appellate jurisdiction of the appropriate State Supreme Court); *Ohio Civil Rights Comm'n v. Dayton Christian Schools*, 477 U.S. 619, 627 (1986) (holding that *Younger* doctrine prevented an injunction against an on-going sex discrimination proceedings before the Ohio Civil Rights Commission).

Despite Plaintiff's protestations to the contrary, the Court finds that the *Younger* abstention doctrine, rather than the *Colorado River* abstention doctrine, is applicable to the instant case. As discussed above, the *Younger* abstention doctrine has routinely been applied in cases involving state civil enforcement actions, such as the state administrative proceeding involved in this case. *See Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 69 (1st Cir. 2005) (discussing types of state proceedings in which *Younger* has been applied). In contrast, the *Colorado River* abstention doctrine is used only in exceptional circumstances to avoid duplicative litigation in state and federal courts. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817-819 (1976). Because the state proceeding here involves a civil administrative enforcement action, the Court finds that *Younger* is better suited to the instant case.

To determine whether *Younger* abstention is appropriate in a particular case, the court must apply the following three-part test: (1) whether the dispute involves an ongoing state judicial

proceeding; (2) whether important state interests are implicated; and (3) whether there is an "adequate" or "full and fair" opportunity to raise the federal claims in the state proceedings. *Middlesex*, 457 U.S. at 432.  If all three prongs of the above-test are met, then the court should abstain from hearing the case as long as bad faith, harassment or other extraordinary circumstances are not involved in the case.

### 1. Is there an ongoing state judicial proceeding?

Clearly, there is an ongoing state judicial proceeding in this case.  The TDI began its enforcement action against Plaintiff in early 2004, two years before Plaintiff filed the instant lawsuit.  Plaintiff filed its state lawsuit in the 201st Judicial District of Travis County, Texas[1] in March 2006, after the TDI's Order became final.  Plaintiff's state suit is seeking judicial review of the Commissioner's Order pursuant to the Texas Insurance Code, Chapter 36, Subchapter D, and the Texas Government Code Chapter 2001.  Thus, Plaintiff's state lawsuit is an appeal of the administrative order and thus is the last stage of the administrative process.  In other words, the filing of the lawsuit is just another step in the administrative process and in no way ends or vacates the administrative proceeding.  *See* TEX. INS. CODE ANN. § 36.204(a) (Vernon 2006).  As the Supreme Court has stated: "[A] necessary concomitant of *Younger* is that a party [wishing to contest in federal court the judgment of a state judicial tribunal] must exhaust his state appellate remedies before seeking relief in the District Court." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975).  Accordingly, the state proceedings in this case are clearly judicial and ongoing.

---

[1] Cause No. D-1-GN-06-000914.

### 2.     **Are important state interests implicated?**

The instant case involves an enforcement action brought by the TDI against ERMC and a finding that ERMC had engaged in the unauthorized business of insurance by operating a MEWA without obtaining a certificate of authority from the TDI.  Courts have uniformly found that the regulation of the insurance industry is an important state interest.  *See Fuller v. Ulland,* 76 F.3d 957, 960 (8th Cir. 1996) (citing *California State Auto Ass'n v. Maloney*, 341 U.S. 105, 109-110 (1951)); *Global Glass & Mirror Co. v. Brown*,  888 F. Supp. 768, 772 (E.D. La. 1995) (noting that regulation of the insurance industry implicates an important state interest which falls within the exclusive jurisdiction of the states under 15 U.S.C. § 1011).  Thus, protecting residents of the State of Texas from unauthorized  insurance companies is clearly an important state interest.  *See* TEX. INS. CODE ANN. § 101.001(b).

In addition to state law issues, this case also involves the application of the federal law of ERISA.  Plaintiff's lawsuit seeks a declaration that ERISA preempts the TDI's enforcement of Texas insurance statutes against it in this case.  Thus, Plaintiff argues that because ERISA is the central issue in the case, federal interests outweigh any competing state interests in regulating the insurance industry.  However, "substantial claims of preemption do not automatically preclude abstention." *Employers Resource Mgmt. Co., Inc. v. Shannon*, 65 F.3d 1126, 1136 (4th Cir. 1995), *cert. denied*, 516 U.S. 1094 (1996); *see also*, *NOPSI*, 491 U.S. at 364-65 (rejecting argument that *Younger* did not require abstention where plaintiff argued that challenged action was completely preempted by federal law).

In a case which presented a virtually identical *Younger* question as the case at bar,[2] the Fourth Circuit "refused to create an exception to *Younger* abstention on ERM's mere assertion of an ERISA preemption." *Employers Resource Mgmt. Co., Inc. v. Shannon*, 65 F.3d 1126, 1136 (4th Cir. 1995) *cert. denied*, 516 U.S. 1094 (1996). In *Shannon*, the State Corporation Commission of the Commonwealth of Virginia ("Commission") brought an enforcement proceeding against ERMC for operating a MEWA without a license. In response to the enforcement action, ERMC filed two suits in federal court. The first sought removal of the state proceeding to federal court under 28 U.S.C. § 1441(b), and the second requested injunctive and declaratory relief in the hopes of barring the Commission from subjecting ERMC to regulation under Virginia's insurance laws. ERMC argued that equitable relief was appropriate because the company was simply acting in its capacity as a single employer in maintaining an employee welfare benefit plan for its employees. Because it was not operating a multiple employer welfare arrangement, ERMC claimed that it should not be subject to the dictates of the Commission or Virginia law. Without deciding the merits of the case, the district court remanded ERMC's removal action to the Commission and denied its claim for equitable relief. The district court found that the requests for injunctive and declaratory relief were barred under the Anti-Injunction Act and the *Younger* abstention doctrine. On appeal, the Fourth Circuit affirmed holding that ERISA does not operate as an automatic exception to the Anti-Injunction Act and also found that the district properly abstained from hearing the case under *Younger*.

The Fourth Circuit rejected the plaintiff's contention that *Younger* should not be applied in the case since the substantive issue of whether ERMC was operating a MEWA involved the

---

[2] In fact, ERMC was also the plaintiff in *Shannon*.

10

application of ERISA. The Circuit stated: "That an issue of federal law is before a state court or administrative agency does not, in and of itself, suggest that a federal court must seize the matter for its own consideration. We observed that under the Supreme Court's decision in *NOPSI*, substantial claims of preemption do not automatically preclude abstention." *Id.* at 1136 (citing *NOPSI*, 491 U.S. at 365). While the Circuit recognized that Congress has enacted broad preemption provisions under ERISA, it found that ERMC had not shown how it would be injured by having to raise its preemption defense in state proceedings rather than in federal court. *Id.* Therefore, the Court concluded that:

> ERM perceives that the Commission is more likely than a federal district court to label ERM's pension plans as MEWA's, thus leaving ERM subject to Virginia's insurance laws. The fact that ERM would prefer a federal forum is not a serious enough interest to rise to the level of an exception to *Younger* abstention. ERM has not provided us with any reason to believe that the Commission is either incapable of reviewing ERM's claim of preemption under ERISA or that the Commission is somehow less trustworthy than its federal counterpart. We refuse to create an exception to *Younger* abstention based on ERM's mere assertion of an ERISA preemption challenge. Thus, the district court did not abuse its discretion in abstaining under *Younger*. *Id.*

The Court is persuaded by the reasoning of the Fourth Circuit in *Shannon* and similarly finds that ERISA preemption issues involved in the instant case do not preclude the application of the *Younger* abstention doctrine in this case. *Larsen v. Cigna Heathcare Mid-Atlantic, Inc.,* 224 F. Supp.2d 998, 1007-008 (D. Md. 2002) (holding that ERISA's preemptive force did not override state's interest in regulating insurance for purposes of *Younger*); *Fuller v. Bartlett*, 894 F. Supp. 874 (D. Md.1995) (where plaintiffs sought declaratory judgment that state regulations were preempted by ERISA, *Younger* abstention appropriate even if plaintiffs could only raise preemption defense on appeal in state courts). Because this case raises important state interests in the regulation of the insurance industry in Texas, the Court finds that this factor weighs in favor of abstention.

3.     **Is there an adequate opportunity in the state proceedings to raise federal claims?**

The third prong of the *Younger* analysis asks whether the plaintiff has or had an "adequate" or "full and fair" opportunity to raise its federal claims in the state proceedings. *Moore v. Sims*, 442 U.S. 415, 431 n. 12 (1979). *Younger* requires only the absence of "procedural bars" to raising a federal claim in the state proceedings. *See, e.g., Middlesex*, 457 U.S. at 432 ("[A] federal court should abstain unless state law clearly bars the interposition of the constitutional claims."). The burden is on the federal plaintiff to show "that state procedural law barred presentation of [its] claims." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (quoting *Moore*, 442 U.S. at 432). ERMC has failed to meet this burden.

The Court finds that ERMC will have an adequate and full and fair opportunity to raise its federal claims in state court. As discussed above, the Court finds that Plaintiff will be able to adequately assert its ERISA preemption claims in state court. State courts have concurrent jurisdiction with federal courts to determine ERISA issues and therefore there is no procedural bar to ERMC asserting that its Plan is governed by the provisions of ERISA. *See Fuller v. Ulland,* 76 F.3d 957, 960-61 (8th Cir. 1996) (holding that state court was competent to determine threshold issue whether ERISA plan was exempt from state regulation and therefore finding that *Younger* applied); *Shannon*, 65 F.3d at136 (finding that ERMC could raise ERISA preemption issue in state court); *International Ass'n of Entrepreneurs of America v. Angoff*, 58 F.3d 1266, 1269 (8th Cir. 1995) (state court has concurrent jurisdiction to determine ERISA status), *cert. denied*, 516 U.S. 1072 (1996).

The Court similarly finds that there is an adequate opportunity for ERMC to raise its federal constitutional claims in the state court proceeding. Article VI of the United States Constitution declares that "the Judges in every State shall be bound" by the Federal Constitution, laws, and

treaties.  As the Supreme Court has declared, "[w]e cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims." *Penzoil*, 481 U.S. at 15. There is no indication that the state court will not adequately address ERMC's federal constitutional claims.  See *Ohio Civil Rights Comm'n.,* 477 U.S. at 629 (finding that it is sufficient for Younger purposes to find that constitutional claims may be raised in state-court judicial review of the administrative proceeding).  In fact, when a plaintiff has failed to raise federal constitutional claims in the state court proceeding, as ERMC has done in this case, "a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  *Penzoil*, 481 U.S. at 15.  Moreover, if the state trial court rejects Plaintiff's federal constitutional claims, Plaintiff may petition the United States Supreme Court to grant certiorari to review its constitutional claims. Thus, *Younger* abstention is appropriate while the case works its way through the state appellate process. *Hicks v. Miranda*, 422 U.S. 332, 350 n. 18 (1975).  ERMC has failed to carry its burden to show that the state court will not adequately address its federal constitutional claims.  Accordingly, this factor also weighs in favor of abstention.

Because all three factors of the *Younger* test have been met, the Court should abstain from hearing this case unless one of the exceptions to the *Younger* doctrine applies.

### 4. Exceptions to *Younger*

Courts may disregard the *Younger* doctrine when (1) the state proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff; (2) the state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it;"or (3) some other extraordinary circumstance is present which justifies federal intervention. *Huffman v. Pursue, Ltd.*,

420 U.S. 592, 608 (1975); *Younger*, 401 U.S. at 54. These exceptions are "extremely narrow" and have rarely been applied. 17A Wright, Miller & Cooper, Federal Practice and Procedure § 4255 (1988).

The Court does not find that any of the above-exceptions to *Younger* are applicable in the instant case. Although ERMC complains that the fine imposed by the TDI is indicative of bad faith and harassment, there is no indication in the record that the TDI initiated the enforcement action in bad faith or an attempt to harass ERMC. As the Supreme Court has stated, "'bad faith' in this context generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant*, 421 U.S. 117, 126 n. 6 (1975). The Court finds that none of the exceptions to the *Younger* doctrine apply in this case.

**B.     Conclusion**

Because there is an ongoing state judicial proceeding in this case, the important state interest of regulating the business of insurance is implicated, and the state court proceeding will provide an adequate opportunity for Plaintiff to raise its federal claims, application of the *Younger* abstention doctrine is warranted in this case. Instead of dismissing the case at this juncture, however, the Court will recommend that the District Court stay the case until the state court proceedings are resolved. Because Plaintiff is seeking monetary damages as well as injunctive relief in this case, the Court finds that staying the case is appropriate. As the Ninth Circuit has declared,

> When an injunction is sought and *Younger* applies, it makes sense to abstain, that is, to refrain from exercising jurisdiction, permanently by dismissing the federal action because the federal court is only being asked to stop the state proceeding . . . . But when damages are sought and *Younger* principles apply, it makes sense for the federal court to refrain from exercising jurisdiction temporarily by staying its hand until such time as the state proceeding is no longer pending.

*Gilbertson v. Albright*, 381 F.3d 965, 981 (9th Cir. 2004).

## IV.  RECOMMENDATION

The Magistrate Court **RECOMMENDS** that Defendants' Motion to Dismiss (Clerk's Docket No. 6) be **GRANTED IN PART** and **DENIED IN PART**.  The Court **RECOMMENDS** that the District Court **GRANT** the Motion with regard to applying the *Younger* abstention doctrine in this case and abstain from reviewing the instant matter.  However, the Court FURTHER RECOMMENDS that the District Court **DENY** the motion to the extent that it requests dismissal of the case, and instead recommends that the District Court stay the matter until the state court proceeding is no longer pending.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 28th day of August, 2006.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE